OPINION OF THE COURT
Frank V. Ponterio, J.
The decision/order on this motion is as follows: Plaintiff, Department 56, Inc., a Minnesota corporation, brings this action for goods sold and delivered. Defendant, Steve Bloom, moves for summary judgment dismissing the complaint on the ground that the goods were sold to a New Jersey corporation, EPS Collectors Emporium, Inc. (hereinafter EPS), of which he was president, and plaintiff has no meritorious cause of action against him individually.
*902 The essential facts are not in dispute. Over a period from July 1996 to February 1997 plaintiff sold certain goods to a retailer operating under the trade name “Collectors Emporium.” That trade name was owned by EPS. Plaintiffs sales representative concedes that he dealt with Collectors Emporium and that all invoices for the subject goods were so identified. In 1997, EPS ceased doing business and is apparently insolvent.
Plaintiff contends that it has a viable claim against Bloom individually. During the period in which the subject goods were sold, the corporate charter of EPS had been revoked by the State of New Jersey in 1993 for the failure to submit annual reports as required by New Jersey Statutes Annotated § 14A:4-5, and as of June 22, 2000 the charter had not been reinstated. Bloom contends that he was unaware of the revocation of the charter of EPS until it was broughtto his attention by plaintiff. He thereafter had the charter of EPS reinstated as of September 2000.
The issue presented to the court on this motion is whether, notwithstanding the subsequent reinstatement of the charter of EPS, Bloom is individually liable for the purchases made during a period when the charter had been revoked. Resolution of this issue depends in turn on whether the court should apply the law of New York or of New Jersey. Under New Jersey law, the personal liability of corporate officers or directors for debts incurred during the period of revocation does not survive reinstatement. The statute, New Jersey Statutes Annotated § 14A:4-5 (7), provides in pertinent part: “The reinstatement relates back to the date of issuance of the proclamation revoking the certificate of incorporation or the certificate of authority and shall validate all actions taken in the interim.” The Appellate Division of the New Jersey Superior Court in a case squarely on point interpreted the reinstatement statute, New Jersey Statutes Annotated § 14A:4-5 (7), as follows:
“The Act could not be clearer. The reinstatement validated the agreement between the [parties]. The statute governing the revocation of the charter for non-filing of annual reports contains its own reinstatement provisions including those for relation back and validation of actions taken during the revocation period. There is thus no reason to add personal liability to that of the corporation.” (Asbestos Workers Local Union No. 32 v Shaughnessy, 306 NJ Super 1, 5, 703 A2d 276, 278.)
*903 Bloom argues that the court should follow New Jersey law since EPS is a New Jersey corporation, all contracts, for the purchase of goods occurred in New Jersey, and EPS’s only place of business is in New Jersey. Moreover, the only connection to New York in this case is that Bloom resides in this State.
Plaintiff contends that New York law should apply because this State has a long-established policy of holding individuals liable for acts performed on behalf of nonexistent corporations and a legitimate interest in enforcing this policy to protect creditors from fraud. Initially, it should be noted that there is no New York statute directly applicable to the facts of this case. While both New York and New Jersey have statutes requiring the payment of franchise taxes, New York does not impose a requirement to file annual reports. Plaintiff nevertheless asserts that Tax Law § 203-a (7), relating to reinstatement following dissolution of a corporation for failure to pay franchise taxes, is applicable. That statute provides in pertinent part:
“Any corporation so dissolved may file in the department of state a certificate of consent of the commissioner of taxation and finance * * * The filing of such certificate of consent shall have the effect of annulling all of the proceedings theretofore taken for the dissolution of such corporation under the provisions of this section and it shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of publication of the proclamation, with the same force and effect as if such proclamation had not been made or published.”
It is not disputed that under the current case law in New York the individual liability that attaches to a corporate officer or director who incurs debt in the name of a corporation dissolved by proclamation survives the later annulment of such proclamation. (Poritzky v Wachtel, 176 Misc 633 [Sup Ct, Putnam County 1941].) The rationale of the court in Poritzky in reaching a conclusion that appears contrary to the plain import of the statute is that to permit a corporate officer to shift his personal liability back to a corporation by merely paying arrears in franchise taxes “would encourage fraud and abuse.” (Id., at 635.) The rationale is seductive and Poritzky has been widely cited in the courts of this and other States as well as Federal courts. (WorldCom, Inc. v Sandoval, 182 Misc 2d 1021 [Sup Ct, NY County 1999]; Annicet Assocs. v Rapid Access *904 Consulting, 171 Misc 2d 861 [Sup Ct, Rockland County 1997]; Pepin v Donovan, 581 A2d 717 [RI 1990]; Lynne Co. v Geraghty, 204 Conn 361, 528 A2d 786 [1987]; Moore v Occupational Safety & Health Review Commn., 591 F2d 991 [4th Cir 1979].)
Poritzky (supra) has been cited in only one New York State Appellate Division decision, Brandes Meat Corp. v Cromer (146 AD2d 666 [2d Dept 1989]). However, Brandes is not on point since it involved a corporation that had been dissolved but not reinstated.
Seductive though it may be, the Poritzky rationale is fallacious, and I respectfully choose not to follow it. Neither Poritzky (supra) nor the cases adopting its holding explain why such fraud and abuse would be encouraged. In general terms, the Poritzky rationale may be stated as follows: the existence of adverse consequences discourages wrongful conduct; therefore the absence of adverse consequences encourages wrongful conduct. People, however, are motivated by the expectation of benefits, not by the absence of adverse consequences. In the field of logic, the Poritzky rationale commits the formal fallacy of denying the antecedent.* I can conjure up no scenario that would entice a corporate officer to purposefully allow his corporation to be dissolved and I fail to see how, even if he did, there would be any fraud perpetrated on a creditor or any benefit inuring to such- corporate officer. Put another way, absent any dissolution a creditor would be dealing with a corporation and relying on the soundness of the corporation’s credit and ability to pay. With a period of dissolution later annulled, a creditor would believe it was dealing with a corporation and relying on the soundness of the corporation’s credit and ability to pay. In both cases the consequences to the debtor, the corporation and the creditor are identical.
Not only is there no incentive to avoid paying franchise taxes, there are disincentives. To be reinstated, a corporation must pay penalties and interest in addition to the back taxes. The Poritzky rationale also ignores the risks associated with a reli *905 anee on a subsequent reinstatement to avoid personal liability. The potential for fraud and abuse presumably arises only with a corporation that is in financial trouble, i.e., unable to pay its creditors. In such circumstances it may also be without funds to pay for reinstatement, thus leaving an offending officer personally liable or requiring the officer to pay from personal funds. Moreover, even if the corporation is able to pay for reinstatement it may elect not to do so where the offending officer has acted contrary to the corporation’s interests and is himself not authorized to dispense corporate funds.
It is true that the possibility of fraud could exist where a creditor is induced to rely on the personal credit of a corporate officer only to find later that an insolvent corporation, not the officer, is liable on the debt. This escape is not so easily accomplished even after reinstatement. If the personal guarantee of the debt is written, the officer remains personally liable even after reinstatement. (Dulik v Amante, 173 AD2d 674 [2d Dept 1991].) If oral, the creditor could easily have a basis for piercing the corporate veil. (See, e.g., Quaid v Ratkowsky, 183 App Div 428 [1st Dept 1918], affd 224 NY 624 [1918]; Hyland Meat Co. v Tsagarakis, 202 AD2d 552 [2d Dept 1994].) Why an individual would place himself in such a vulnerable position is not readily apparent. The fraud or abuse, if any, in such circumstances is the continued accumulation of debt by a corporation when it knows it is or will be unable or unwilling to pay.
Finally, I note that the sole purpose of Tax Law § 203-a is to raise revenue for the State and therefore the State has a paramount interest in its enforcement. (See, Held v Crosthwaite, 260 F 613 [2d Cir 1919].) Nevertheless, despite this interest, the State itself imposes no personal liability upon offending corporate officers or directors as noted in Prentice Corp. v Martin (624 F Supp 1114 [ED NY 1986]).
I find therefore that Tax Law § 203-a, even if it should control, absent a personal guarantee by Bloom, provides no basis for retaining personal liability following reinstatement of EPS. In any event, I find no merit in plaintiffs contention that New York law should control. This State has no public policy interest in protecting a Minnesota corporation from the acts of a New Jersey corporation. To argue that this State has such an interest in preventing wrongdoing by a resident of this State, i.e., Bloom, begs the question. To conclude that New York law applies requires a finding that Bloom is personally liable, but to find that Bloom is personally liable requires a finding that *906 New York law applies.
Accordingly, defendant’s motion is granted dismissing the complaint.

 The fallacy may be more readily apparent in the following analogous argument:
If you live on Staten Island, then you live in New York City; you don’t live on Staten Island, therefore you don’t live in New York City.
The court acknowledges the assistance of Professor Arthur F. Gianelli, Chair, Department of Philosophy, St. John’s University, in categorizing this fallacy.
The court also notes that its analysis is not based on logic alone lest it tread on hallowed ground. “The life of the law has not been logic; it has been experience.” (Oliver Wendell Holmes, Jr., The Common Law [1881].)