OPINION OF THE COURT
Lawrence Knipel, J.
Fourth-party defendant Vito Lodato moves for an order, pursuant to CPLR 3212, granting summary judgment dismissing the fourth-party action insofar as asserted against him in his individual capacity.
The above-captioned third-party and fourth-party actions were severed from the underlying action by order of this court dated January 19, 2005.
Factual Background
The main action is one to recover damages for personal injuries sustained by plaintiff Charles Lodato on August 11, 2000, while he was employed by fourth-party defendant Magara Construction, Inc. as a laborer on a school construction/ renovation project in Valley Stream, New York. Defendant/third-party plaintiff Greyhawk North America, L.L.C. was the construction manager and entered into an agreement with third-party defendant/fourth-party plaintiff Nagan Construction, Inc. to have Nagan serve as a contractor on the project.
On or about July 6, 2000, Nagan entered into a separate written subcontract agreement with Magara for Magara’s performance of certain work on the project and movant, Vito Lodato, executed the subcontract agreement in his capacity as Magara’s president. The subcontract agreement contained one or more hold harmless provisions which allegedly required Magara to, among other things, indemnify Nagan with respect to actions such as the one brought by plaintiff.
Magara’s “certificate of incorporation” was filed with the New York Department of State in October 1984. Magara was, *420 however, dissolved on December 29, 1993 by proclamation of the Secretary of State pursuant to Tax Law § 203-a for nonpayment of franchise taxes. It, nevertheless, continued all of its corporate operations and entered into the July 2000 subcontract agreement during its period of dissolution. Only subsequent to Nagan’s commencement of the instant fourth-party action against it did Magara pay its delinquent taxes, thus causing annulment of the dissolution and Magara’s reinstatement by the Secretary of State to active corporate status on March 1, 2005.
Procedural History
The first-party action was discontinued as against defendant Palace Electrical Contractors Inc. prior to trial of that action. On January 28, 2005, a jury rendered a verdict in the first-party plaintiffs favor and against Greyhawk and awarded total damages in excess of $1.8 million.
By decision and order dated December 2, 2004, this court (Ruchelsman, J.) granted Greyhawk’s motion for summary judgment on its claim against Nagan for indemnification. Thus, only the fourth-party action is presently unresolved.
Movant, as noted, was, and held himself out to be, Magara’s president and signed the July 6, 2000 subcontract agreement in his corporate capacity. He now moves for summary judgment dismissing the fourth-party action against him on the grounds that Magara operated as a de facto corporation during its period of dissolution and that he executed the subcontract as an officer thereof and, as such, cannot be held personally liable on the contract.
In opposition to the motion, Nagan claims that an officer of a corporation that has been dissolved by proclamation of the Secretary of State pursuant to the Tax Law remains personally liable for obligations of the corporation undertaken while it was dissolved, whether or not there is a subsequent annulment of the dissolution and reinstatement of the corporation.
Analysis
To grant summary judgment, it must clearly appear that there are no material issues of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]).
The general rule is that an officer acting expressly as an agent for a corporation is not thereby personally liable upon contracts executed by him or her for the corporation (see MacDougal v Birdie Co., 20 AD2d 175 [1963]; see also Kreutter v McFadden *421 Oil Corp., 71 NY2d 460, 468 [1988], citing Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1 [1964]; Salzman Sign Co. v Beck, 10 NY2d 63 [1961]; American Media Concepts v Atkins Pictures, 179 AD2d 446, 448 [1992]).
As also relevant herein, the rule as pertains to corporations involuntarily dissolved by proclamation of the Secretary of State for failure to pay taxes is that the corporation is then permitted to conduct business only to the extent necessary to wind up its affairs. Dissolved corporations have neither de facto nor de jure existence and “[a]n individual who enters into a contract on behalf of a corporation that has neither de facto nor de jure status is individually obligated on that contract” (Commonwealth Tit. Ins. Co. v 535 W. 162nd St. Equities, Inc., 5 Misc 3d 1017[A], 2004 NY Slip Op 51410[U], *2 [2004], citing Tax Law § 203-a; Business Corporation Law § 1005; .Brandes Meat Corp. v Cromer, 146 AD2d 666 [1989]; Lorisa Capital Corp. v Gallo, 119 AD2d 99 [1986]; Imero Fiorentino Assoc. v Green, 85 AD2d 419 [1982]; Puro Filter Corp. of Am. v Trembley, 266 App Div 750 [1943]).
The general rule applies, however, only where the dissolution has not been annulled (Commonwealth Tit. Ins., 5 Misc 3d 1017[A], 2004 NY Slip Op 51410[U], *2). Here, for more than 11 years movant acted either with knowledge or in ignorance of Magara’s dissolution and carried on Magara’s business and entered into agreements, including the one at issue, as though the corporation had not been dissolved. Once an action was commenced against the company, movant acted to annul the dissolution and Magara’s corporate status was reinstated. Movant now argues that the company must be deemed to have been acting in de facto status during the period of dissolution.
There are no established bright line rules that would permit resolution of the instant motion based upon unchallenged law as applies to the particular facts herein; rather, the state and federal cases applying New York law are all fact-specific, rest on similar considerations of policy and equity, and are in conflict. The cases, moreover, fail to conclusively address and/or disagree over both the issue of whether a reinstated corporation is deemed to have acted in de facto status during the period of dissolution and whether an officer or director who enters into a goods or services contract on the corporation’s behalf during the period of dissolution may be held personally liable on the contract even after the reinstatement.
The “conflicting authority as to whether or not Tax Law § 203-a provides a basis, absent a personal guarantee, for retain *422 ing personal liability following reinstatement of the corporation” was discussed by the New York County Supreme Court in Klein v Guglielmi (2001 NY Slip Op 50083[U], *1 [Sup Ct, NY County 2001]), noting that some courts have “held that individual officers may be personally liable even if the corporation is subsequently reinstated,” while others have “held that unless the individuals acted fraudulently or in bad faith, they may not be held personally liable for judgments based on breach of contract entered into after the corporation was dissolved for failure to pay franchise taxes and before it was reinstated” (id.). Because it was undisputed in Klein that the subject corporation had never been reinstated, the court found the defendant officer personally liable for the debts incurred by the corporation after its dissolution, without resolving the recognized conflicts in the case law (id.).
As the case law stands, several state courts (the leading case being Poritzky v Wachtel, 176 Misc 633 [1941]) have held that corporate officers and even shareholders are individually liable for the debts of a corporation dissolved pursuant to section 203-a of the Tax Law for failing to pay franchise taxes (see also Brandes, 146 AD2d 667; WorldCom, Inc. v Sandoval, 182 Misc 2d 1021 [1999]; Annicet Assoc. v Rapid Access Consulting, 171 Misc 2d 861 [1997]), while other state courts and the federal cases (the leading case being Prentice Corp. v Martin, 624 F Supp 1114 [ED NY 1986]) have held directly the opposite (see also L-Tec Elecs. Corp. v Cougar Elec. Org., Inc., 198 F3d 85 [2d Cir 1999]; Bedford Hills Supply v Hubert, 251 AD2d 438 [1998]; Olympus Am. v 5th Ave. Photo, 194 Misc 2d 752 [2002]; Department 56 v Bloom, 186 Misc 2d 901 [2001]).
In Poritzky, the Putnam County Supreme Court held that a corporation’s president was personally liable, even after the corporation’s reinstatement, for contracts he entered into on the corporation’s behalf during the period of dissolution. The court specifically noted as a ground for its decision that to permit a corporate officer to shift his personal liability back to the corporation by merely paying arrears in franchise taxes “would encourage fraud and abuse” (Poritzky, 176 Misc at 635).
The Second Department, in Brandes, noted that the defendant corporate officer therein, “in effect, purported to act on behalf of a corporation which had neither a de jure nor a de facto existence” and held the officer individually responsible for the obligations incurred after the corporation was dissolved (146 AD2d at 667). Brandes is, however, inapposite from the *423 instant matter in that Brandes involved a corporation that had been dissolved and not subsequently reinstated.
In WorldCom, the company was reinstated after the action was filed. However, the New York County Supreme Court, relying in part on a Connecticut matter, J.M. Lynne Co., Inc. v Geraghty (204 Conn 361, 528 A2d 786 [1987]), held that the corporation’s reinstatement to corporate status did not act to retroactively validate its prior acts of entering into a telecommunications services contract so as to relieve its officers of any personal liability (WorldCom, 182 Misc 2d at 1024).
In Annicet, the Rockland County Supreme Court ruled that an officer of the dissolved corporation could be held personally liable on a services contract entered into by him on the corporation’s behalf during the period of dissolution. The court, however, specifically noted that, although the subject corporation had filed its New York State franchise tax returns during the period it was dissolved, it had “never filed any application for authority to do business in New York as required by Business Corporation Law article 13” (171 Misc 2d at 863).
As to the opposing cases, in Prentice, the District Court of the Eastern District of New York specifically declined to follow Poritzky and, relying upon other New York State law, held that: (1) where a dissolved corporation “carries on its affairs and exercises corporate powers as before, it is a de facto corporation . . . and ordinarily no one but the state may question its corporate existence”; (2) reinstatement validates the acts of the company’s officers and directors “as if the charter had never been repealed”; and (3) unless there is a showing of fraud or bad faith, corporate principals and shareholders are not personally liable on contracts entered into after the corporation was dissolved for failure to pay franchise taxes and before reinstatement (Prentice, 624 F Supp at 1115, 1116, citing Held v Crosthwaite, 260 F 613 [2d Cir 1919]; Garzo v Maid of Mist Steamboat Co., 303 NY 516, 524 [1952]; D & W Cent. Sta. Alarm Co. v Copymasters, Inc., 122 Misc 2d 453, 457 [1983]; Sacks v Anne Realty Co., 131 Misc 117 [1927]). The District Court added that the New York Legislature would have explicitly created a private remedy had it intended for individual officers, directors or shareholders to become liable (Prentice, 624 F Supp at 1116).
In L-Tec Elees., the Second Circuit Court of Appeals ruled that a company’s reinstatement to corporate status is accomplished nunc pro tunc and retroactively validates contracts entered into during the period of dissolution, thus relieving offi *424 cers of any potential personal liability for actions taken in the corporation’s name during the period when corporate status had lapsed (198 F3d at 87).
The Second Department, in Bedford Hills Supply, held that a seller of goods did not have an action in fraud individually against corporate officers for the price of supplies purchased during a period when the corporation was dissolved since, at the time the goods were purchased on account, the corporate officers had no actual knowledge of the corporation’s dissolution (251 AD2d at 438-439).
In Department 56, the Richmond County Supreme Court ruled that, under New York law, the individual liability that attaches to a corporate officer or director who incurs debt in the name of a corporation dissolved by proclamation of the Secretary of State for failure to pay franchise taxes does not survive the later annulment of such proclamation (186 Misc 2d at 903-904). In so doing, the Department 56 court also considered the issue of fraud and the potential for abuse, but explicitly rejected the reasoning employed in Poritzky, noting that the conclusion reached in Poritzky “appears contrary to the plain import” of Tax Law § 203-a, which is to raise revenue for the State (id. at 903, 905).
In Olympus Am., the New York City Civil Court, New York County, found the corporation’s president not personally liable on a contract executed by him during the period of dissolution on behalf of the corporation where the back taxes had been paid and the president believed, in good faith but erroneously, that the corporation had filed a certificate for reinstatement (194 Misc 2d at 754).
There have been few recent cases on this issue and none which resolve the question of a corporate officer or director’s personal liability under the same or similar facts and circumstances presented herein. For example, in Pennsylvania Bldg. Co. v Schaub (14 AD3d 365 [2005]), the First Department, finding no showing that such act was necessary to the winding up of the corporation’s affairs, held that the defendant, an officer of a corporation previously dissolved pursuant to the Tax Law, was personally liable for rent due under a lease he executed as president of the corporation during the period of dissolution. Unlike the situation here, it appears from that decision that the corporation was never reinstated. Similarly, in Commonwealth Tit. Ins., a 2004 decision, the dissolution had not been annulled (5 Misc 3d 1017[A], 2004 NY Slip Op 51410[U], *1).
As the Court of Appeals has not yet reached these specific issues, this court looks to and takes note of all arguably relevant *425 facts and circumstances of the prior decisions in an attempt to discern a common rule or principle to be applied to the particular facts of this case.
The present case seeks indemnification based upon a performance or services contract and it was the defendant corporation which pledged to perform certain services in return for a promise of payment. Many of the prior cases (Poritzky; L-Tec Elees.; Bedford Hills Supply; Brandes; Department 56) involve situations where the corporation contracted for or incurred a debt through its procurement of goods. In WorldCom, the dissolved corporation contracted for certain telecommunications services. Annicet involved a services contract in which the plaintiff contracted to perform certain services for the dissolved corporation. Klein involved a lease agreement, where the corporation was the lessee. The facts in Olympus Am. do not indicate the type of contract sued upon and Prentice indicates only that two contracts were involved. Commonwealth Tit. Ins. Co. is the only matter that involves an agreement to indemnify, which agreement arose in connection with the sale of real property and as an inducement to the plaintiff title search company to omit certain judgments and liens as objections to title.
The court further notes that, in Poritzky, WorldCom and Annicet, the corporation was not reinstated until after the complaint had been filed against it. In Prentice and L-Tec Elees., it is not clear whether the reinstatement occurred before or after the action was instituted against the corporation. In Brandes, as previously noted, the dissolution was never annulled. In Department 56, the corporation was reinstated only after the dissolution “was brought to [the president’s] attention by plaintiff” (186 Misc 2d at 902). In Bedford Hills Supply, the corporation paid its back taxes, penalties and interest in the same year as the action was commenced; however, it is unclear whether the corporation achieved reinstatement before or after commencement of the action. In Olympus Am., the contract being sued upon was entered into while the corporation was dissolved, but also after the corporation had cured the tax deficiency and under its president’s good-faith belief that the corporation had been reinstated. None of the decisions, except Brandes and Olympus Am., appear to rely heavily, if at all, on this fact in reaching their conclusions.
Finally, it is clear that the court’s rationale in Poritzky, in holding the corporate officer personally liable, was to discourage “fraud and abuse” (at 635). Similarly, in WorldCom (at 1025), *426 the court appeared concerned with the fact that “the contract at issue was negotiated and executed some time after the corporate dissolution” and that bad faith, fraud and misrepresentation were alleged as to the contract’s formation. The corporation allegedly falsely represented that it was in the telecommunications business and contracted with the plaintiff for such services when, in fact, the corporation’s principals were also the sole owners, officers and directors of another entity, a “ ‘reseller’ of telephone services to the public” (id. at 1022), and the principals entered into the subject contract using the defendant corporation’s name and credit references because they did not believe the credit of their other business concern, the true telecommunications company, would be acceptable to the other contracting party.
The Second Department, in Bedford Hills Supply, specifically found that corporate officers could not be held personally liable in the absence of fraud and where the officers had no knowledge of the dissolution at the time the contract was entered into. Similarly, in Olympus Am., the lower court found no basis for personal liability where the officer “believed in good faith that the corporation had taken the necessary steps for reinstatement” (194 Misc 2d at 754).
Prentice and Department 56 were also concerned with the issues of fraud and bad faith, but the corporation having been reinstated, those courts rejected any policy holding individual officers or directors personally liable on contracts entered into during the period of dissolution on the ground, at least in part, that to do so would not further the statute or prevent such wrongs.
Based upon all of the foregoing, the court finds that individual officers or directors of corporations should be shielded from personal liability absent a showing of fraud or misrepresentation and that an officer or director of a corporation that has forfeited its corporate charter for nonpayment of taxes and been dissolved by proclamation of the Secretary of State pursuant to the Tax Law is not personally liable for service obligations of the corporation contractually undertaken while the corporation was dissolved, where the officer acted without knowledge of the corporation’s dissolution, the dissolution was truly inadvertent and not due to neglect, the corporation quickly rectified the default by seeking reinstatement and there is a subsequent annulment of the dissolution and reinstatement of the corporation.
*427 As to the instant matter, the passage of time — more than 11 years — between Magara’s involuntary dissolution and its reinstatement, the fact that Magara appears to be a closely held corporation of which movant is the chief corporate officer, and the fact that Magara failed, until the commencement of the instant fourth-party action, to take any steps to pay its delinquent taxes and reinstate its corporate status with the State would seem to suggest that movant knew or should have known of the involuntary dissolution, but consciously avoided payment of back taxes owed and reinstatement until it was deemed necessary by virtue of the commencement of the fourth-party action.
Movant has, in any event, failed to demonstrate each of the elements delineated by the court above and deemed necessary to support a finding that he may not be held personally liable in this action. Because there are triable issues of fact as to, inter alia, the question of movant’s knowledge of the corporation’s status and his own bad faith, summary judgment is unwarranted (see Prentice, 624 F Supp at 1116) and the motion is denied.