## B. PERINI & SONS, Inc. v. SOUTHERN RY. CO.

Court of Appeals of Kentucky.

May 18, 1951.

E. B. Wilson, Pineville, for appellant.

Henry L. Bryant, Pineville, for appellee.

MOREMEN, Justice.

Appellant, B. Perini & Sons, Inc., filed a petition in the Bell Circuit Court in which it sought judgment against appellee, Southern Railway Company, under the terms of a contract which was filed as an exhibit with the petition. The petition was thereafter amended and appellee filed a general demurrer to the petition as amended. The court at first overruled the demurrer but thereafter, upon reconsideration, sustained it. Appellant declined to plead further and judgment was entered dismissing the petition and granting the appeal.

Some time prior to September 20, 1948, appellant began a coal mining operation at Fonde in Bell County and by contract dated September 20, 1948, entered into a side track agreement with the Southern Railway Company under the terms of which it was agreed, among other things, that the Railway Company would construct commercial tracks to Fonde for the use by appellant in the process of moving coal from its mine and shipping it to the market. We are asked to interpret the terms of this contract.

In general the contract provides for the realignment of the main track of the Railway Company and for the construction of two industrial tracks at appellant's cost, but it was also agreed that appellee would pay to appellant in yearly settlements during a four and one-half year term the sum of $2 for each carload of freight delivered on or shipped from the industrial tracks to be constructed, with the provision that no such repayments would be made by the Railway Company after the amount had reached the sum equivalent to the cost of the installation of the industrial tracks. It was agreed that appellant should pay regular freight rates on its shipments.

The contract is clear, under its terms, concerning title to the side tracks upon the occurrence of specified events, because it is certain from the words used that the title (1) vested in appellant until he was reimbursed for construction costs at the rate of $2 per car shipped over the industrial tracks; (2) vested in Railway Company absolutely at the expiration of four and one-half years from the date the side tracks were in operation, regardless of whether or not the payment of $2 per freight carload aggregated a sum equal to the total cost of construction; and (3) remained in appellant during the four and one-half year term, except to the extent that refund of the cost of the side tracks had been made to appellant by the Railway Company.

The contract contained a clause under which the parties were given the reciprocal right to cancel the contract upon sixty days' notice and it was a disagreement concerning the meaning of this provision that precipitated the controversy involved in this case.

Within the first year of the life of the contract it was terminated by appellant (appellant's brief states that the operation was for a few months) and during this period 426 revenue producing cars were shipped over the industrial tracks. The Railway Company was billed for $852 for 426 cars at $2.00 per car.

After the contract had been cancelled, one of the side tracks was taken up by the Railway Company and the material was de-livered to appellant at the latter's expense. The other track, appellant sold as it was. After these things were done, the Railway Company refused to pay the $2 per car for any of the 426 revenue producing cars shipped during the period of operation.

The contract was terminated under the terms of Provision No. 12 of the contract, which reads: "That either party hereto may terminate this agreement at any time hereafter, but upon sixty (60) days' notice in writing, to the other of election so to do; in which event, upon the expiration of the time limited by such notice, the Railway Company may discontinue the operation of said industrial tracks and remove its property and fixtures therefrom, and from the right of way appurtenant thereto; and the party of the second part shall have the right to have the material in said new tracks Nos. 1 and 2 located upon the right of way of the Railway Company and owned by the party of the second part, as aforesaid, taken up and delivered to the party of the second part; it being understood that the work of taking up said materials shall be done, if the Railway Company so elects, by the forces of the Railway Company, but in any event at the expense of the party of the second part."

The appellant contends that the Railway Company unconditionally agreed to pay $2 per car for each revenue producing car shipped and states that this payment evidently was intended to recompense appellant for the use of the side tracks by the Railway Company in handling freight for other parties. Appellant contends that the payments served a dual purpose: (1) to reimburse appellant for cost of construction of the tracks and (2) to provide a means for the Railway Company to acquire title and ownership in the track materials.

█ It was alleged in the petition that this contract was prepared in its entirety by the Railway Company. In the case of Theatre Realty Co. v. P. H. Meyer Co., 243 Ky. 346, 48 S.W.2d 1, 2, this court said: "The rule is that a contract is read liberally in favor of the person who accepts it rather than in favor of the person who draws it and submits it to the other person for ac-

ceptance. In other words, the person who accepts a contract is not bound beyond the fair meaning of the writing which he accepts. * * * .'No rule is better established than that, when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it.'" We believe the contract in this case is not susceptible of two meanings.

Appellant insists that the payment of two dollars per carload for "the use of Perini's side tracks in handling freight hauled for other customers would necessarily imply the Railroad Company should pay something for those benefits, the amount of which was set out in Paragraph (3) on the contract," and points out that Railway Company had paid nothing on this account, but nowhere in the contract is it stated that the $2 payment was inserted in the contract for that purpose, and we cannot imply such an agreement from consideration of the entire contract. To the contrary, the $2 payments are consistently treated as the means by which appellant, to some extent, will be reimbursed for expenditures made for the construction of the side tracks.

Provision 3, referred to above, (1) sets the amount of the charge, (2) limits the time in which the charge may properly be made to four and one-half years, (3) limits the payments to a total sum equal to the actual cost, and (4) with considerable caution, reiterates that "no such repayments will be made by the Railway Company after they have aggregated such total sum, nor, in any event, after the expiration of said term."

Provision No. 6, of the side track agreement, provides in part: "That the title to the rails, materials and fixtures in said new industrial tracks shall, upon the settlement by the party of the second part of its accounts hereunder with the Railway Company, be vested in the party of the second part, except to the extent that refund of the cost of said new tracks shall have been made to the party of the second part by the Railway Company, as aforesaid; provided,

however, that upon the expiration of the said four and one-half year refund period the Railway Company shall own said new tracks, regardless of whether or not the party of the second part shall have earned in refunds the entire costs thereof * *."

Provision No. 7 contains this phrase: "Provided, however, that when and after the Railway Company shall have refunded to the party of the second part the full amount of the costs of said new tracks, as aforesaid, and at all events upon the expiration of the said four and one-half year refund period * * *."

It is plain from the language used in Provisions Nos. 3, 6, and 7 that the parties intended that the $2 payment be made for the purpose of refunding to a certain extent to appellant the cost of the new tracks and it is equally clear that under the terms of Provision No. 6 that upon each payment the Railway Company would become vested with title to the extent of the amount of said payment. Nothing which might indicate a contrary intention is contained in the contract.

No payments were made during the short life of this contract. However appellant has asserted absolute ownership in the two industrial tracks because of its action in selling one track and in salvaging the material in the other. If the Railway Company had paid $2 per carload for the 426 cars shipped, it would have been entitled to an interest in the side tracks to the extent of said payment and it would have been entitled to repayment, upon cancellation of the contract, of a sum equal to its interest in the property. But this condition did not arise. The designated time for settlement had not arrived, and Railway Company made no payment and obtained no interest in the title to the property. Appellant, under the conditions of the contract, transferred no interest in the property to Railway Company and is, therefore, not entitled to payment for something it did not sell or deliver.

Wherefore, the judgment is affirmed.