Ben SPURLOCK, Appellant,

v.

Tate BEGLEY, Appellee.

No. 2009–SC–000050–DG.

Supreme Court of Kentucky.

April 22, 2010.

John T. Aubrey, Manchester, KY, Counsel for Appellant.

Phillip Lewis, Hyden, KY, Counsel for Appellee.

Opinion of the Court by Justice
CUNNINGHAM.

Robert Griffin formed Caribou Coal Mining Processing, LLC, a limited liability company, for the purpose of acquiring and operating a coal tipple in Leslie County, Kentucky. After its formation, Appellee, Tate Begley, was approached by Griffin and asked to invest in the coal business. Begley borrowed $75,000.00 from a local bank and loaned it to Caribou Coal. On November 10, 2004, Caribou Coal executed a promissory note, payable to Begley, which stated that the loan amount was to be paid in full by June 1, 2005. No payments were made on the note, despite Griffin's promises to make payments. Eventually, the due date passed on the note without any repayment.

Appellant, Ben Spurlock, had an ownership interest with two other individuals in a company known as Up The Creek Mining, LLC. Spurlock exchanged with Griffin a 25% ownership interest in Up The Creek Mining for a 25% ownership interest in Caribou Coal. Begley and Spurlock attended a meeting together at Caribou Coal's offices in Manchester, Kentucky. Begley testified, which Spurlock ultimately denied, that Spurlock suggested to Griffin that Begley be given a 25% ownership interest in Caribou Coal in order to pay off the $75,000.00 debt. Griffin apparently agreed to this proposal and orally announced his intention to give Begley the 25% interest. This agreement was never materialized in writing. No further actions were taken by Griffin to memorialize the agreement.

Spurlock came to Begley's office on February 22, 2006 and proposed to purchase Begley's interest in Caribou Coal. There was some discrepancy at trial concerning exactly what Spurlock was attempting to purchase. According to Begley's testimony, an agreement was reached whereby Spurlock would purchase Begley's promissory note, effectively replacing him as owner of a 25% interest in Caribou Coal. Spurlock testified, however, that he was not purchasing the note, but was instead purchasing the 25% interest in Caribou Coal. A bare-bones note and agreement was produced by Begley, which provided as follows:

> 70000.00 will be paid by Ben Spurlock 200 Dawahare Dr. Hazard, KY 41701 by May 01, 2006. This transaction is for 25

percent ownership of Caribou Coal Processing LLC. If the note is not paid by the due date then an additional charge for what ever interest incurred by Tate Begley will be added to the balance. This is in reference of the promissory note signed by Caribou Coal November 10, 2004 copy of note will be included in the agreement.

The two parties signed and notarized the agreement that day and Spurlock paid Begley $5,000.00 earnest money, with the balance to be paid pursuant to the note.

Spurlock testified that shortly after making the initial $5,000.00 payment to Begley, he telephoned Griffin and indicated that he was purchasing Begley's 25% interest in Caribou Coal. Griffin responded that Begley did not have a 25% interest and only held a promissory note. When confronted with this information, Spurlock contacted Begley and informed him that he would not pay the outstanding debt.

Caribou Coal eventually became insolvent and ceased all operations. In March 2007, Begley filed a complaint in the Leslie Circuit Court seeking a judgment on the promissory note and agreement. Spurlock denied liability, asserting the defense of failure of consideration based on Begley's fraudulent misrepresentation of owning a 25% interest in Caribou Coal. In addition, Spurlock filed a counterclaim to recoup the $5,000.00 down payment made to Begley. A jury trial was conducted in August 2007. The case was submitted to the jury upon a single interrogatory, which provided:

> Do you believe from the evidence heard in this case that Robert Griffith [sic] transferred to Tate Begley at [sic] 25% ownership interest in the company, Carabou [sic] Coal Processing, LLC?

The jury found in the affirmative, and the trial court subsequently denied Spurlock's motion for judgment notwithstanding the verdict. In a 2–1 decision, the Court of Appeals affirmed the decision of the Leslie Circuit Court, stating that ownership of a limited liability company interest is not synonymous with being a member of such a company, and that the trial court did not err in its instructions. On October 21, 2009, this Court granted discretionary review.

For the following reasons, we reverse the decision of the Court of Appeals and hold that Begley failed, as a matter of law, to produce sufficient evidence that he possessed an ownership interest in Caribou Coal Processing, LLC.

 We note at the outset that limited liability companies are creatures of statute, and their organizational and structural parameters are outlined in KRS Chapter 275. *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky.App.2009). As the issues presented in this case are purely matters of statutory interpretation, they are subject to de novo review by this Court. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000).

Though the brief, one-paragraph contract between Spurlock and Begley purports to transfer the latter's "25 percent ownership interest" in Caribou Coal Processing LLC, Chapter 275 does not speak in terms of "owners" of a limited liability company, but instead such people are referred to as "members." *See* Thomas E. Rutledge and Lady E. Booth, *The Limited Liability Company Act: Understanding Kentucky's New Organizational Option*, 83 Ky. L.J. KRS 275.275 governs admission to membership in a limited liability company. That statute provides:

> (1) Subject to subsection (2) of this section, a person may become a member in a limited liability company:
>
>> (a) In the case of the person acquiring a limited liability company interest directly from a limited liability compa-

ny, upon compliance with an operating agreement or, if an operating agreement does not so provide in writing, upon the written consent of all members; and

(b) In the case of an assignee of the limited liability company interest, as provided in KRS 275.255 and 275.265.

(2) The effective time of admission of a member to a limited liability company shall be the later of:

(a) The date the limited liability company is formed; or

(b) The time provided in the operating agreement or, if no time is provided, when the person's admission is reflected in the records of the limited liability company.

From the evidence introduced at trial, it is clear that Begley was not a "member" pursuant to KRS 275.275. As no evidence of an operating agreement of Caribou Coal was introduced, it was necessary for Begley to introduce evidence that all of the members of the company had consented in writing to his membership. We find no such evidence in the record before us. At most, it appears that Begley had a limited liability company interest that he received in exchange for his tendering $75,000.00 to Caribou Coal. KRS 275.195(1). This was, according to testimony introduced at trial, assigned to him by Griffin at the meeting in Manchester.

Pursuant to KRS 275.195(1) and KRS 275.255(1)(a), a member may assign, in whole or in part, the economic rights (the limited liability company interest) associated with a membership interest. It, thus, appears that the membership interest in a limited liability company includes both economic rights and also rights to participate in the management of the business. Rutledge, 83 Ky. L.J. at 33. If the non-transferring members do not approve of the transfer of a membership interest pursuant to KRS 275.265(1), the interest is divided into its economic rights (which are transferred) and its governance rights (which are not transferred). *See* KRS 275.255(1)(d) ("Until the assignee of a limited liability company interest becomes a member pursuant to KRS 275.265(1), *the assignor shall continue to be a member . . . .*"). The implication is that if a majority of the members do approve, a transfer of a membership interest will convey both the economic and the governance rights. This, then, leads to the conclusion that simply acquiring economic rights does not, in and of itself, equate to "ownership" or "membership" in the limited liability company.

Therefore, even assuming that the testimony is correct, Begley still did not receive an "ownership interest" in Caribou Coal. As detailed above, no evidence was introduced to show that Begley ever followed the requirements of KRS 275.265(1) to become a "member" of Caribou Coal. To the contrary, it appears that Begley has, at the most, an economic interest in Caribou Coal. Stated differently, there was a substantial failure of proof on the part of Begley to show that he, in fact, ever had an "ownership interest" in Caribou Coal.

According to the testimony of Spurlock, he was under the impression that he was to purchase a 25% ownership interest in Caribou Coal so Up The Creek Mining could sell coal through Caribou's coal tipple. It was Begley who drafted the agreement to sell his "25 percent ownership of Caribou Coal Processing LLC." Courts in this state have long held that "when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *B. Perini & Sons v. Southern Ry. Co.,* 239 S.W.2d 964, 966 (Ky.1951) (internal citation omitted). In the context

of limited liability companies, "ownership" and "membership" are synonymous. Rutledge, *supra.* Begley had no ownership interest to convey to Spurlock and, as such, there is a failure of consideration. *O.P. Link Handle Co. v. Wright,* 429 S.W.2d 842, 845 (Ky.1968).

In addition, the jury instructions prepared by the trial court were incorrect as a matter of law. An instruction's function is "only to state what the jury must believe from the evidence ... in order to return a verdict in favor of the party who bears the burden of proof." *Howard v. Commonwealth,* 618 S.W.2d 177, 178 (Ky.1981) (quoting *Webster v. Commonwealth,* 508 S.W.2d 33, 36 (Ky. 1974)). The purpose of instructions is to provide guidance for the jury by submitting the applicable law relating to the issues in the controversy. *Shewmaker v. Richeson,* 344 S.W.2d 802, 806 (Ky.1961). The jury instructions in this case, however, failed to correctly state the law. Given the technical and specialized meaning of the terms "owner" and "member" in the context of limited liability companies, the tendered instruction was legally deficient.

At trial, Spurlock offered the following proposed jury instruction:

1. You are instructed that a member (owner) of a Kentucky limited liability company means a person who has been admitted to membership as set forth within the limited liability company's operating agreement or, if an operating agreement does not so provide in writing, upon the written consent of all members. (KRS 275.015(13) and KRS 275.275).

INTERROGATORY NO. I: From the evidence at the trial of this action, on February 22, 2006, was Tate Begley the owner of a 25% interest in Caribou Coal, LLC?

We believe that the instructions offered by Spurlock "properly and intelligibly state the law." *Howard,* 618 S.W.2d at 178. As Senior Judge Henry noted in his dissent: "It makes little sense to ask a jury whether there has been a transfer of an ownership interest in a limited liability company without informing it about the requirements to transfer such an interest." We agree. Therefore, we hold that the jury instructions were erroneous as a matter of law.

Based upon the foregoing, we reverse the decision of the Court of Appeals and hold that Begley failed, as a matter of law, to produce sufficient evidence that he possessed an ownership interest in Caribou Coal Processing, LLC. In addition, we find error in the jury instructions and, accordingly, hold that Spurlock was entitled to a judgment notwithstanding the verdict.

All sitting. All concur.