RENDERED: MARCH 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1265-MR

LORETTA MOUNCE, IN HER
CAPACITY AS ADMINISTRATRIX
OF THE ESTATE OF JAMIE SCOTT
MOUNCE, AND ON BEHALF OF THE
TEXAS CATTLE COMPANY, LLC                                APPELLANT


APPEAL FROM PULASKI CIRCUIT COURT
v.            HONORABLE TERESA WHITAKER, JUDGE
ACTION NO. 19-CI-01197


BRAD MOUNCE, INDIVIDUALLY
AND AS THE SURVIVING MEMBER
OF THE TEXAS CATTLE
COMPANY, LLC                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Loretta Mounce, in her capacity as Administratrix of the Estate

of Jamie Scott Mounce, and on behalf of the Texas Cattle Company, LLC, appeals

from the Pulaski Circuit Court's dismissal of her lawsuit against the appellee, Brad Mounce, individually and as the surviving member of the Texas Cattle Company, LLC ("LLC"). Upon careful review, we conclude that Loretta does not have standing, either under the Kentucky Limited Liability Corporation Act, Kentucky Revised Statutes ("KRS") 275.001 *et seq.*, or under the common law, to assert the majority of her claims against the appellee. As the legal representative of a deceased member, Loretta does have standing under KRS 275.185(3) to seek information from Brad about the LLC, but she failed to preserve her claim for sanctions. Consequently, we affirm the judgment of the circuit court in full.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Brad Mounce and his brother, Jamie Scott Mounce, formed the Texas Cattle Company, LLC, for the purpose of buying, selling, and trading cattle. The LLC was member-managed and had no written operating agreement. Brad and Jamie were its only members and Brad was the LLC's registered agent.

Seven years later, Jamie died unexpectedly. His widow, Loretta Mounce, was appointed the administratrix of his Estate on December 20, 2018. On December 2, 2019, Loretta filed suit against Brad and the LLC in Pulaski Circuit Court. The complaint alleged that Brad had refused to provide bank account records and income tax returns for the LLC, in violation of KRS 275.185, and that he had violated his fiduciary duties to the Estate. The complaint also contained

-2-

claims regarding two life insurance policies purchased by Jamie, naming Brad as the beneficiary. The complaint alleged that the proceeds of these policies, in the amounts of $150,000 and $20,000, were intended to cover or offset Jamie's share of the liabilities of the LLC. According to Loretta, this liability was specifically related to a mortgage with Cumberland Security Bank, taken out on November 15, 2013, by the LLC, Loretta, Jamie, Brad, and Brad's wife, Mary K. Mounce, securing the principal amount of $344,250. The complaint alleged that Brad had failed to use the insurance policy proceeds to pay off the mortgage, thereby diminishing the value of the LLC, and increasing the potential liability of the Estate. Lastly, the complaint included a demand for the production of all records of assets, liabilities, receipts, income, debts, costs, and fees of the LLC and a complete accounting by Brad of his use of the assets of the LLC and the insurance proceeds.

A lengthy period of discovery followed. In his deposition, Brad testified that he and his wife had set up a separate cattle business, Cardinal Landing, LLC, which sold some cattle to the LLC in October 2019 and that his wife, following the death of Jamie, became a fifty percent member of the LLC in 2019. He also testified that some of the LLC equipment was sold at auction and that he had not discussed this decision with Loretta. Brad also claimed certain

equipment as his personal property which had been characterized as property of the LLC on a financial statement.

Following this discovery period, on January 13, 2023, Loretta sought leave to file an amended complaint containing additional claims based largely on this deposition testimony. The amended complaint: 1) alleged that Brad violated his duties under KRS 275.247 by selling assets of the LLC other than in the course of business; 2) sought to make Brad account to the LLC, and hold as a trustee for it, any profit or benefit derived by him without the consent of a majority in-interest members from any transaction connected with the LLC or any use of its property, pursuant to KRS 275.170; and 3) alleged that he made improper distributions to himself of LLC property and engaged in conflict of interest transactions which violated his duties under KRS 275.170 and KRS 275.247. The complaint further requested; the LLC be realigned as a plaintiff in order to restore to it all assets improperly taken by, or distributed to, Brad including but not limited to, the life insurance policy proceeds; the restoration to the LLC, of all the profits and benefits which were taken by Brad in violation of KRS Chapter 275; and that the LLC be judicially dissolved and Loretta be awarded the amount representing Jamie's financial interest in the LLC and costs and fees.

Brad moved to dismiss for lack of subject matter jurisdiction. The circuit court entered an order granting the motion. Loretta filed a motion to alter,

amend, or vacate which additionally sought to impose a constructive trust and to pierce the corporate veil of the Texas Cattle Company. The circuit court denied the motion and this appeal by Loretta followed.

## STANDARD OF REVIEW

"The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is de novo." *Harrison v. Park Hills Bd. of Adjustment*, 330 S.W.3d 89, 93 (Ky. App. 2011) (citation omitted). Similarly, whether a plaintiff has standing "is a jurisdictional question of law that is reviewed de novo." *Ward v. Westerfield*, 653 S.W.3d 48, 51 (Ky. 2022), *reh'g denied* (Sep. 22, 2022) (citation omitted).

## ANALYSIS

## STANDING

Section 112(5) of the Kentucky Constitution vests "original jurisdiction of all justiciable causes not vested in some other court" in Kentucky's circuit courts. In order to bring a justiciable claim, thereby invoking the jurisdiction of the circuit court, a plaintiff must have standing. Standing focuses on "whether a particular party has the legally cognizable ability to bring a particular suit." *Goff v. Edwards*, 653 S.W.3d 847, 854 (Ky. 2022) (citation omitted).

Standing may be created by statute. "Statutory standing refers to whether a statute creating a private right of action authorizes a particular plaintiff

-5-

to avail herself of that right of action." *Lexington-Fayette Urban Cnty. Human Rights Commission v. Hands On Originals*, 592 S.W.3d 291, 296 (Ky. 2019) (internal quotation marks and citations omitted). "Statutory standing is simply statutory interpretation: the question it asks is whether [the legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Commonwealth Cabinet for Health and Fam. Servs., Dep't of Medicaid Servs. v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 191 (Ky. 2018) (citation omitted).

Limited liability companies "are creatures of statute, and their organizational and structural parameters are outlined in KRS Chapter 275." *Spurlock v. Begley*, 308 S.W.3d 657, 659 (Ky. 2010) (citing *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009)). Chapter 275 itself states that "[t]o the extent the articles of organization and the operating agreement do not otherwise provide, the Kentucky Limited Liability Company Act shall govern relations among the limited liability company, the members, the managers, and the assignees." KRS 275.003(8). "[T]he common law of business entities has largely been abrogated by the adoption of the various statutes, like the Kentucky Business Corporation Act and the Kentucky Limited Liability Company Act." *Pannell v. Shannon*, 425 S.W.3d 58, 68 (Ky. 2014). "To the extent that common law doctrines could arguably govern limited liability companies, the Kentucky Limited Liability

Company Act 'is in derogation of common law,' and the traditional rule of statutory construction that 'require[s] strict construction of statutes which are in derogation of common law shall not apply to its provisions.'" *Id.* (quoting KRS 275.003(1)). "Thus, to the extent the statutes conflict with common law, the common law is displaced." *Id.*

Upon his death, Jamie became disassociated from, and ceased to be a member of, the Texas Cattle Company. KRS 275.280(1)(f)1. The parties agree that his Estate became the assignee of his interest under KRS 275.265, which provides that "[u]nless otherwise set forth in the operating agreement, a successor in interest to a member who is disassociated from the limited liability company shall have the rights and obligations of an assignee with respect to the member's interest." KRS 275.265(5). The rights of an assignee are defined in pertinent part as follows:

> (1) Unless otherwise provided in a written operating agreement:
>
>  . . .
>
>> (b) An assignment shall entitle the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled;
>>
>> (c) An assignment of a limited liability company interest shall not dissolve the limited liability company or entitle the assignee to participate in the management and affairs of the limited

> liability company or to become or exercise any rights of a member other than the right to receive distributions pursuant to subsection (1)(b) of this section[.]

KRS 275.255(1). An assignee of an interest in an LLC "shall become a member only if a majority-in-interest of the members consent." KRS 275.265(1).

The distinction between a member and an assignee is highly significant. "[T]he membership interest in a limited liability company includes both economic rights and also rights to participate in the management of the business." *Spurlock*, 308 S.W.3d at 660. An assignee, on the other hand, has economic rights only. *Id.*

The circuit court held that the Estate's status as an assignee, rather than a member, meant that Loretta as the Estate's administratrix does not have statutory authority to challenge Brad's management of the LLC. It cited KRS 275.337(1), which specifies that a member may maintain a direct action against a limited liability company, another member, or a manager; KRS 275.337(3), which provides that a derivative action on behalf of an LLC may be maintained only by a member; KRS 275.335(1) which provides that a suit on behalf of an LLC may be brought only by one or more members; and KRS 275.175(1), which provides that the affirmative approval of a majority-in-interest members is required to decide any matter connected with the business affairs of an LLC. The circuit court correctly determined that in the absence of different terms in a written operating

-8-

agreement, the Kentucky Limited Liability Corporation Act does not empower an assignee to sue a member for alleged mismanagement of the LLC.

Loretta nonetheless argues that she had standing under KRS 275.170(2) and (3), because Brad, as a member, owed a basic duty of faithfulness and loyalty to the LLC. These statutory provisions state:

> (2) The duty of loyalty applicable to each member and manager shall be to account to the limited liability company and hold as trustee for it any profit or benefit derived by that person without the consent of more than one-half (1/2) by number of the disinterested managers, or a majority-in-interest of the members from:
>
> > (a) Any transaction connected with the conduct or winding up of the limited liability company; or
> >
> > (b) Any use by the member or manager of its property, including, but not limited to, confidential or proprietary information of the limited liability company or other matters entrusted to the person as a result of his or her status as manager or member.
>
> (3) In determining whether a transaction has received the approval of a majority-in-interest of the members, membership interests owned by or voted under the control of the member or manager whose actions are under review in accordance with subsection (2) of this section, and membership interests owned by an entity owned by or voted under the control of that member or manager, shall not be counted in a vote of the members to determine whether to consent, and the membership interests shall not be counted in determining whether a quorum, if required by a written operating agreement, exists to consider whether to consent. That a transaction

was fair to the limited liability company shall not constitute a defense to the failure to request and receive the required consent of the disinterested managers or members.

KRS 275.170.

Loretta contends that Brad violated this statute when he sold some LLC equipment, allegedly for his own personal benefit, because he was unable to obtain the approval of a majority-in-interest of the members of the LLC. Without ruling on the validity of this claim, which is not directly pertinent to the issue of Loretta's standing, we note only that Brad, as the sole surviving member of the LLC, was presumably the majority-in-interest member. In any event, Loretta contends that the statutory provisions impose a duty of loyalty on each member that may be enforced by the court and do not require enforcement by another member or by the LLC itself, because it is a duty of loyalty applicable to each member.

But the court cannot enforce the statutory duty of loyalty *sua sponte*; the enforcement action must be initiated by a party with standing, that is, a person or entity to whom the duty is owed. "A claim for breach of fiduciary duty requires that a plaintiff allege that '(1) the defendant owes a fiduciary duty **to the plaintiff**; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach.'" *Insight Kentucky Partners II, L.P. v. Preferred Automotive Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016) (emphasis supplied) (citation

-10-

omitted).  In a recent unpublished opinion, in which an economic interest holder in an LLC brought claims for breach of fiduciary duty against the LLC's managers, a federal district court interpreting Kentucky law aptly observed: "This is not a case about whether the law imposes fiduciary duties in the context of LLCs.  It does.  But those duties are owed *to* particular entities."  *GenCanna Acquisition Corp. v. 101 Enterprises, LLC*, No. 5:23-CV-00305-GFVT, 2024 WL 4333679, at \*4 (E.D. Ky. Sep. 25, 2024).  The federal court held that the breach of fiduciary claims failed because the fiduciary obligations ran only to the LLC and its members, not to economic interest holders.  *Id.*  Similarly, the duty of loyalty that Brad owes pursuant to KRS 275.170 does not run to assignees, and assignees are not empowered to enforce this statutory duty against Brad.

## CLAIMS AGAINST AN LLC

To understand the underpinnings of Loretta's claims we must first understand the basic distinction between the two types of claims which can be maintained against an LLC.  Kentucky law is replete with instances in which shareholders file actions against corporations which can be analogized to those against an LLC.  Claims may be brought by two different means:  derivative shareholder suits and direct shareholder suits.

> Derivative shareholder suits serve two primary functions: compensation and deterrence.  Often at issue in derivative suits are the past actions of the corporation's own officers and directors, who are not likely to assert an

action against themselves. Therefore, derivative suits have a deterrent effect because they alert officers and directors to the fact that shareholders may hold them liable to the corporation for their actions even if they fail to do so themselves. Derivative suits also aid in compensating the injured corporation and shareholders by allowing shareholders a means to restore what the corporation has lost. Typically, courts hold that shareholders should bring a suit derivatively if a claim involves a breach of the directors' fiduciary duties of care and loyalty. This could entail "grossly negligent mismanagement, waste of corporate assets, excessive compensation, usurpation of corporate opportunity, and . . . general self-dealing." . . .

A direct shareholder action is a claim by a shareholder to redress a personal injury for which the shareholder is entitled to relief. The purpose of a direct shareholder suit is to compensate a shareholder for suffering a harm that the corporation itself has not suffered. Due to the exclusivity of the harm, courts allow shareholders to sue the corporation directly on their own behalves.

Elizabeth J. Thompson, *Direct Harm, Special Injury, or Duty Owed: Which Test Allows for the Most Shareholder Success in Direct Shareholder Litigation?*, 35 J. CORP. L. 215, 218 (2009).

Derivative actions by shareholders are permitted only if they comply with KRS 271B.7-400. Similarly, KRS 275.337 outlines who may sue in the name of the LLC and specifically disallows a derivative action against an LLC if the claimant is not a member of the LLC. KRS 275.337(5)(b).

However, Loretta argues that the circuit court did have jurisdiction over her claim relating to the disposition of Jamie's life insurance proceeds. She contends that this claim has nothing to do with KRS 275.335 or KRS 275.337.[1] Instead, Loretta maintains that any injury sustained by the Estate as a result of Brad's alleged misuse of the insurance proceeds stems entirely from a purported injury to the LLC. Loretta does not argue that she is personally entitled to the insurance proceeds – only that Brad, as a member of the LLC, should have applied the proceeds to offset the LLC's debts. However, her claim clearly falls within those that are disallowed by KRS 275.337 as derivative actions.

Lorretta's third argument, that Brad violated KRS 275.247 in disposing of LLC property, can be similarly rejected. Lorretta has no standing to bring her claim as a person with economic interest only. Only a member could pursue this alleged violation by Brad.

## CLAIM FOR SANCTIONS

Loretta contends that the circuit court erred in determining it did not have jurisdiction to impose sanctions for Brad's failure to comply with KRS 275.185(3), which states:

> Members, if the management of the limited liability
> company is vested in the members . . . shall render, to the

---

[1] KRS 275.335 and KRS 275.337 respectively provide that suits on behalf of the LLC may be brought only by members or managers of the LLC, and that derivative actions may only be brought by the members of the LLC.

> extent the circumstances render it just and reasonable, true and full information of all matters affecting the members to any member, and the member's agent, and to the legal representative of any deceased member or of any member under legal disability.

KRS 275.185(3). She contends that the litigation was unduly lengthy and expensive because Brad persistently failed to provide information about the LLC in accordance with the statute.

Early in the litigation, on April 6, 2020, the circuit court granted Loretta's motion to compel Brad to produce certain documents and information necessary to assess the value of Jamie's interest in the LLC. The defendants were ordered to respond fully to her requests for the production of documents. Loretta does not provide a citation to the record to show 1) when she requested the circuit court to impose sanctions on Brad for failure to comply with these requests; 2) when the circuit court ruled that it lacked jurisdiction to impose sanctions; or 3) when she requested the circuit court to make an express finding on this issue. Consequently, this argument is not preserved for our review. "The rationale for the preservation rule is that a court . . . may not be found to be in error where it has not been given an opportunity to (1) rule on the issue or (2) correct any alleged error." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 312 (Ky. 2023) (internal quotation marks and citation omitted). Loretta has not indicated when the circuit

-14-

court was given this opportunity and consequently this issue will not be addressed on appeal.

## PIERCING THE CORPORATE VEIL

Loretta argues that piercing the corporate veil and the imposition of a constructive trust are equitable remedies, not claims or causes of action and consequently the circuit court had jurisdiction to award remedial relief under KRS 275.170 (duty of loyalty), KRS 275.247 (sale of assets), and common law. Loretta presented these claims for the first time in her response to Brad's motion to dismiss and the circuit court refused to address them as untimely raised. As a matter of law, these claims fail because Loretta did not identify any legal authority for the proposition that a plaintiff seeking equitable remedies may invoke the circuit court's jurisdiction without demonstrating that she has standing. "[T]he doctrine of piercing the corporate veil is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability." *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky. App. 2009). As Washington's Court of Appeals aptly observed in addressing whether an individual director had standing to bring a derivative action:

> Although a trial court sitting in equity is able to consider or provide equitable remedies, equity itself does not provide standing. The purpose of equity is to permit a trial court to fashion remedies when the law does not provide adequate remedies. Here, the question is not one of remedy, but rather one of standing. As stated above,

-15-

the Legislature has not provided standing for an
individual director to bring a derivative suit on behalf of
the corporation.

*Lundberg ex rel. Orient Foundation v. Coleman*, 115 Wash. App. 172, 180, 60
P.3d 595, 600 (2002). Similarly, the Kentucky legislature has not provided
standing for an assignee to bring these claims asserted by Loretta against the LLC
or its managing member, and consequently, equitable remedies are not available.

## DISSOLUTION OF THE LLC

Lastly, Loretta argues that the circuit court had jurisdiction to dissolve
the LLC pursuant to KRS 275.290 because Brad had violated KRS 275.247 by
disposing of LLC assets and taking unauthorized actions pursuant to KRS 275.170.
Again, she argues that these statutes do not require enforcement action by a
member and that the circuit court must have jurisdiction to remedy these violations
and dissolve the LLC because the LLC lacked any member with authority to act.
She claims that the prerequisites for judicial dissolution outlined in *Unbridled
Holdings, LLC v. Carter*, 607 S.W.3d 188 (Ky. App. 2020), are present here.
*Unbridled Holdings* involved two individuals, Arvin and Carter, who created three
LLCs, each with an operating agreement. Arvin and Carter were members of each
LLC. After almost two years, their business relationship deteriorated with deep
disagreements over the management of the LLCs. Eventually, Arvin filed a
petition in Jessamine Circuit Court seeking to have the three companies ordered

-16-

dissolved pursuant to KRS 275.290. The circuit court ordered one of the LLCs to be dissolved but refused to dissolve the other two. The Court of Appeals reversed for additional analysis and findings because the circuit court improperly held that deadlock between the members was a prerequisite to judicial dissolution. *Unbridled Holdings*, 607 S.W.3d at 198-99. There was never any dispute in *Unbridled Holdings* that the circuit court had jurisdiction over the action because the plaintiff, Arvin, was a member of each of the three LLCs in question. Although the prerequisites to dissolution set forth in *Unbridled Holdings* may be present in the case of the Texas Cattle Company, Loretta, unlike Arvin, is not a member of the LLC and has not demonstrated standing to invoke the circuit court's jurisdiction to dissolve the LLC.

## CONCLUSION

For the foregoing reasons, the order granting the motion to dismiss is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Winter Huff
Somerset, Kentucky

BRIEF FOR APPELLEE:

Molly K. Hardy
Somerset, Kentucky